IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LOCAL UNION NO. 626, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA PENSION FUND | CIVIL ACTION |
| LOCAL UNION NO. 626, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA WELFARE TRUST FUND | |
| LOCAL UNION NO. 626, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA APPRENTICESHIP FUND and its subsidiary, t/a CARPENTERS LOCAL 626 JOINT APPRENTICESHIP TRAINING CENTER, INC., P.O. Box 740, Davis Road and Oakwood Lane, Valley Forge, PA 19482 | |
| and | |
| UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, AFL-CIO LOCAL 626 OF DELAWARE, DELAWARE STATE REGIONAL COUNCIL OF CARPENTERS; INTERNATIONAL HEALTH & SAFETY TRAINING FUND/MARKETING FUND, CARPENTERS LOCAL 626 POLITICAL ACTION COMMITTEE, and JOSEPH DURHAM 626 Wilmington Road New Castle, DE 19720 | |
| Plaintiffs | |
| v. | |
| MIDDLE STATES DRYWALL, INC. 17 W. Miner Street West Chester, PA 19381 | |
| J.R. COLDIRON & SONS, INC. P.O. Box 460 Newport Gap Pike Avondale, PA 19311 | |
| COLDIRON ENTERPRISES, INC. | |

101316-1

| | |
|---|---|
| 17 West Miner Street | : |
| P.O. Box 660 | : |
| West Chester, PA 19381 | : |
| | : |
| COLDIRON BUILDING, INC. | : |
| 845 Waterway Road | : |
| Oxford, PA 19363 | : |
| | : |
| ALN CONSTRUCTION | : |
| P.O. Box 7717 | : |
| Wilmington, DE 19803 | : |
| | : |
| JOHN D. COLDIRON | : |
| 845 Waterway Road | : |
| Oxford, PA 19363 | : |
| | : |
| JOHN R. COLDIRON | : |
| 17 West Miner Street | : |
| P.O. Box 660 | : |
| West Chester, PA 19381 | : |
| | : |
| BRENDA PETERSON | : |
| P.O. Box 7717 | : |
| Wilmington, DE 19803 | : |
| | : |
| GREG PETERSON | : |
| P.O. Box 7717 | : |
| Wilmington, DE 19803 | : |
|               Defendants | :    Civil No. 02-2761 |

## AMENDED COMPLAINT

Plaintiffs, by undersigned counsel, complain about Defendants as follows:

## JURISDICTION

1.  This Court has jurisdiction over the subject matter of this action under 29 U.S.C. §§185(a), 1132 and 1145.

2.  A copy of this Complaint has been served on the Secretary of Labor and the Secretary of Treasury of the United States or their designated agents by certified mail.

## VENUE

3.     Venue lies in the United States District Court for the Eastern District of Pennsylvania under 29 U.S.C. §§185(a) or 1132(e)(2).

## PARTIES

4.     Plaintiffs Local No. 626, United Brotherhood of Carpenters and Joiners of America Pension Fund, Local No. 626, United Brotherhood of Carpenters and Joiners of America Welfare Fund and Local No. 626, United Brotherhood of Carpenters and Joiners of America Apprenticeship Fund and its subsidiary t/a Carpenters Local 626 Joint Apprenticeship Training Center, Inc. (respectively, "Pension Fund", "Welfare Fund", "Apprenticeship Fund" and jointly "Funds") are trust funds established under 29 U.S.C. §186(c)(5) and "multiemployer plans" and "employee benefit plans" within the meaning of 29 U.S.C. §1102(37), (1), (2) and (3).  The Funds are administered within the Eastern District of Pennsylvania.

5.     Plaintiffs, United Brotherhood of Carpenters and Joiners of America, AFL-CIO Local 626 of Delaware (together with the Safety Fund and PAC, "Union") and the Delaware State Regional Council of Carpenters, its parent, are unincorporated associations, commonly referred to as a labor union, and an employee organization that represents, for purposes of collective bargaining, employees of Defendants, who are and/or were employed in an industry affecting interstate commerce within the meaning of 29 U.S.C. §§152(5), (6) and (7) and 1002(4), (11) and (12).

6.     Plaintiff Joseph Durham ("Durham" or jointly with the Funds and Union, "Plaintiffs") is the Union Chairman and a trustee and fiduciary with respect to the Funds within the meaning of 29 U.S.C. §1002(21) with a business address as listed in the caption.  He is authorized to bring this action on behalf of all Trustees of the Funds.  Durham is the Assistant

Business Manager, Executive Secretary-Treasurer of the Union and is authorized to bring this action on behalf of the Union and IAF.

7. Plaintiff International Health & Safety Training Fund/Marketing Fund ("Safety Fund") is/ are dues-financed trust funds established by the United Brotherhood of Carpenters and Joiners of America for itself and its affiliates. Local 626 and Durham are authorized to sue in the name and on behalf of the Safety Fund.

8. Plaintiff Carpenters Local 626 Political Action Committee ("PAC") is an unincorporated and separate fund established for the purpose of advancing the political interests of the members of the union by lawfully influencing the selection, nomination, election and/or appointment of individuals for political office. It is entitled to wage deduction and check-off, pursuant to valid authorization by members of Local 626, from Defendants.

9. Plaintiff Industry Advancement Fund ("IAF") is a fund established and maintained by the Delaware Contractors Association, Inc., a non-profit business league, for the purposes of fostering and advancing the interests of the carpentry industry in and around Delaware.

10. Defendant Middle States Drywall, Inc. ("MSD") is a corporation and an employer in an industry effecting commerce within the meaning of 29 U.S.C. §§152(2), (6) and (7), 1002(5), (11) and (12) with a business office at the address listed in the caption.

11. Defendant J.R. Coldiron & Sons, Inc. ("Coldiron" and together with MSD, "Coldiron Companies") is a corporation and an employer in an industry effecting commerce within the meaning of 29 U.S.C. §§152(2), (6) and (7), 1002(5), (11) and (12) with a business office at the address listed in the caption.

12. Defendant Coldiron Enterprises, Inc. ("CEI" and together with MSD and

Coldiron, "Coldiron Companies") is a corporation and an employer in an industry effecting commerce within the meaning of 29 U.S.C. §§152(2), (6) and (7), 1002(5), (11) and (12) with a business office at the address listed in the caption.

13. Defendant Coldiron Building, Inc. ("CBI" and together with Coldiron Companies, "Defendants") is a corporation and an employer in an industry effecting commerce within the meaning of 29 U.S.C. §§152(2), (6) and (7), 1002(5), (11) and (12) with a business office at the address listed in the caption.

14. Defendant ALN Construction ("ALN" and together with Coldiron Companies and CBI, "Defendants") is a corporation and an employer in an industry effecting commerce within the meaning of 29 U.S.C. §§152(2), (6) and (7), 1002(5), (11) and (12) with a business office at the address listed in the caption.

15. Defendant John D. Coldiron ("J.D. Coldiron" and together with Coldiron Companies, CBI and ALN, "Defendants") is the president of CBI and CEI and Vice President of Coldiron with a business address as listed in the caption.

16. Defendant John R. Coldiron ("J.R.Coldiron" and together with Coldiron Companies, CBI, ALN and J.D. Coldiron, "Defendants") is the president of Coldiron and MSD with a business address as listed in the caption.

17. Defendant Brenda Peterson ("B. Peterson" and together with Coldiron Companies, CBI, ALN, J.D. Coldiron and J.R. Coldiron, "Defendants") directly or indirectly controls the financial status of ALN with a business address as listed in the caption.

18. Defendant Greg Peterson ("G. Peterson" and together with Coldiron Companies, CBI, ALN, J.D. Coldiron, J.R. Coldiron, B. Peterson, "Defendants") husband of B. Peterson, directly or indirectly controls the financial status of ALN with a business address as listed in the

caption.

## COMMON FACTS

19. At all times relevant to this action, MSD was party to a collective bargaining agreement(s) with the Union (singly or jointly, "Labor Contract").

20. MSD signed or agreed to abide by the terms of agreements and declarations of trust of the Funds ("Trust Agreements") made between certain employers and employee representatives in an industry(ies) effecting interstate commerce to promote stable and peaceful labor relations.

21. On information and belief;

   1) The officers and management of MSD and CBI are the same;

   2) MSD and CBI are engaged in the same business, serving the same or similar type of customers;

   3) Labor relations for MSD and CBI are handled by the same person(s);

   4) MSD and CBI employ the same employees, use the same equipment to serve the same or similar type of customers;

   5) The ownership of MSD and CBI is or has been the same.

   6) CBI was, at all times, fully aware of the amounts owed to Plaintiffs by MSD.

Based upon these facts and others, CBI is the alter ego of MSD and/or successor of MSD with liability for its debts. Alternatively, MSD and CBI constitute a single employer or MSD and CBI are operating as joint employer.

22. CBI separately executed the Labor Contract with Union and also agreed to abide by the terms and provisions of the Trust Agreements.

23.   On October 9, 1996, Coldiron Companies entered into a Settlement Agreement ("Agreement") with the Funds for the payment of delinquent contributions and other amounts it owes to Funds and for payment of its ongoing contributory obligations. A true and correct copy of the Agreement is attached as Exhibit 1.

24.   On October 9, 1996, Coldiron Companies executed a note ("Note") which set forth their obligations if the Agreement was violated. A true and correct copy of the Note is attached as Exhibit 2.

25.   On October 9, 1996, J.D. Coldiron, J.R. Coldiron and B. Peterson, agreed to be bound by all provisions on this Settlement Agreement and Note. Exhibits 1 and 2.

26.   Coldiron Companies, J.D. Coldiron, J.R. Coldiron and B. Peterson have defaulted under the terms of the Settlement Agreement by failing to pay all installment payments due after September 2000, totaling at least $27,496.08, and failing to cure the default after written notice.

27.   Under the Labor Contract, Trust Agreements, and Agreement, Coldiron Companies agreed;

    a.   To make full and timely payments on a weekly basis to the Funds and Union as required by the Labor Contract;

    b.   To file weekly remittance reports with the Funds detailing all employees or work for which contributions were required under the Labor Contract;

    c.   To produce, upon request by the Funds or Union, all books and records deemed necessary to conduct an audit of their records concerning their obligations to the Funds and Union and to pay the costs of such audit

    d.   To pay liquidated damages, late charges, interest, audit costs, and all costs of litigation, including attorneys' fees, expended by the Funds to collect any amounts due

as a consequence of their failure to comply with their contractual obligations described in subparagraphs a, b, and c.

28.    On information and belief, the Coldiron Companies were at all relevant times affiliated business enterprises engaged in the same business, with common ownership, management and centralized control of labor relations, that use and have used identical employees, equipment and other assets in such manner as to constitute a single integrated business enterprise that is a single employer or alter ego for all purposes relevant to this action. As a single employer or alter ego the Coldiron Companies are all bound to the terms and conditions of the Labor Contract and Trust Agreements and Agreement including the obligation to make fringe benefit contribution payments to the Funds and Union.

29.    MSD documents in the possession of Defendants that were necessary for the performance of an audit were destroyed prematurely and outside of accepted business practices.

## COUNT I – AMOUNTS DUE UNDER CONTRACT - SUM CERTAIN

### FUNDS

### v.

### CBI

30.    The allegations of Paragraphs 1 through 29 are incorporated by reference as if fully restated.

31.    On information and belief, CBI has failed to pay amounts due under the Labor Contract, Trust Agreement and Rules and Rules and Regulations from August 2001 to present in at least the sum of $76,442.87 based upon information presently available to the Fund.

32.    CBI has not paid the Funds as required by the Labor Contract, Trust Agreements, and applicable law.

**WHEREFORE**, the Funds ask that the Court:

(1) Enter judgment against CBI in favor of the Funds for at least the sum of $76,442.87, plus any additional amounts which become due during the course of this litigation or are revealed by an audit of CBI's records together with liquidated damages, interest and costs, including reasonable attorney's fees incurred in this action or the collection or enforcement of any judgment, as provided in the Labor Contract and Trust Agreement.

(2) Grant such other or further relief, legal or equitable, as may be just, necessary or appropriate.

## COUNT II –CONTRIBUTIONS UNDER ERISA - SUM CERTAIN

### FUNDS

### v.

### COMPANY

33. The allegations of Paragraphs 1 through 29 are incorporated by reference as if fully restated.

34. CBI has failed to pay at least the sum of $76,442.87 in contributions to the Funds in violation of 29 U.S.C. §1145.

35. The Funds have been damaged by CBI's violation of 29 U.S.C. §1145.

**WHEREFORE**, the Funds ask that the Court:

(1) Enter judgment against CBI in favor of the Funds for at least the sum of $76,442.87, plus any additional amounts which are found to be due and owing during the course of this litigation or are revealed by an audit of CBI's records, together with interest at the rate prescribed by 26 U.S.C. §6621, liquidated damages equal to the greater of the interest on the unpaid contributions or liquidated damages provided by the documents governing the Funds or

statute and reasonable a reasonable attorney's fees and costs incurred in this action or the collection or enforcement of any judgment.

(2) Grant such other or further relief, legal or equitable, as may be just, necessary or appropriate.

## COUNT III –AMOUNTS DUE UNDER SETTLEMENT AGREEMENT

### FUNDS

### v.

### COLDIRON COMPANIES

36. The allegations of Paragraphs 1 through 29 are incorporated by reference as if fully restated.

37. Coldiron Companies are liable for all amounts owed to the Funds under the terms of the Agreement and Note.

38. Coldiron Companies owe at least $27,496.08 under the Labor Contract, Agreement and Note for the period of September 2000 to present based upon information presently available to the Funds.

39. Despite Demand for payment, Coldiron Companies have not paid the amounts owed.

**WHEREFORE**, the Funds ask that the Court:

(1) Enter judgment against Coldiron Companies in favor of the Funds, for at least the sum of $27,496.08 plus such other amounts as may become due and owing during the pendency of this lawsuit or as the result of an audit of the records of Defendants, together with liquidated damages, interest and costs, including the costs of any audit, and reasonable attorney's fees and costs incurred in this action or the collection or enforcement of any judgment, as provided in the

Labor Contract, Agreement and Note.

(2) Grant such other or further relief, legal or equitable, as may be just, necessary or appropriate.

## COUNT IV –AMOUNTS DUE UNDER SETTLEMENT AGREEMENT

### FUNDS

### v.

### CBI

40. The allegations of Paragraphs 1 through 29, 36 through 39 are incorporated by reference as if fully restated.

41. MSD is liable for all amounts owed to the Funds under the terms of the personal guarantee and Note. As the alter ego of MSD, CBI is bound to the Settlement Agreement and Note and liable for all debts and obligations of MSD, including amounts owed to the Funds.

42. MSD owes at least $27,496.08 under the Labor Contract Agreement and Note for the period of September 2000 to present based upon information presently available to the Funds.

43. Despite demand for payment, MSD has not paid the amounts owed.

**WHEREFORE**, the Funds ask that the Court:

(1) Declare that CBI is the alter ego of MSD, is bound to the Settlement Agreement and Note and liable for all amounts owed by MSD and all obligations of MSD.

(2) Enter judgment against CBI, and in favor of the Funds, for at least the sum of $27,496.08 plus such other amounts as may become due and owing during the pendency of this law suit or as the result of an audit of the records of the Defendants together with liquidated damages, interest and costs, including the costs of any audit, and reasonable attorney's fees and

costs incurred in this action or the collection or enforcement of any judgment, as provided in the Labor Contract, Agreement and Note.

(3) Grant such other or further relief, legal or equitable, as may be just, necessary or appropriate.

## COUNT V –DELAWARE FRAUDULENT CONVEYANCE

### FUNDS

### v.

### ALN, B. PETERSON AND G. PETERSON

44. The allegations of Paragraphs 1 through 2, 36 through 43 are incorporated by reference as if fully restated.

45. MSD became indebted to the Funds as a result of delinquent contributions and other amounts owed to the Funds and the entry of an Agreement and Note executed on October 9, 1996. Exhibits 1 and 2. MSD subsequently ceased operations.

46. MSD desolved or distributed its assets after the demand for payment was made and at a time when it was insolvent.

47. In connection with the dissolution and liquidation of MSD, MSD distributed the available assets to ALN. ALN has refused to provide records concerning the affairs of MSD and distribution of their assets. The Funds thus cannot plead the complete transfers which have been concealed from them.

48. B. Peterson directly or indirectly controls the financial status of ALN and was therefore an active participant in the distribution in the transfer of assets.

49. B. Peterson, who directly or indirectly controls the financial status of ALN and was therefore an active participant in the distribution in the transfer of assets.

50.     The distributions were "transfers" of "assets" within the meaning of 6 Del C. §1301 or were transfers or conveyances to "insiders" within the meaning of 6 Del C. §1301. At the time of any distributions, MSD, ALN, B. Peterson and G. Peterson had notice of the "claim" of the Funds and their status of "creditors" within the meaning of 6 Del C. §1301.

51.     On information and belief, the transfers were made with actual intent, under 6 Del C. §1304(a)(1) to hinder, delay, or defraud the Funds in light of the following:

   (a)   The transfers were made to insiders

   (b)   The transfers consisted of all or substantially all available assets of MSD

   (c)   The transfers took place shortly before or after the amounts became due and payable, and

   (d)   On information and belief, the value of the consideration received for the transfers was not reasonably equivalent to the value of the assets transferred, and

   (e)   MSD was insolvent of became insolvent as a result of the transfer.

52.     The transfers left MSD insolvent within the meaning of 6 Del C. §1302.

53.     The transfers were made without fair consideration within the meaning of 6 Del C. §1303.

54.     The transfers were fraudulent to creditors, including the Funds, within the meaning of 6 Del C. §1304, 1305.

55.     The Funds will be irreparably injured in the event that ALN, B. Peterson and G. Peterson are allowed to continue to create corporate shells and transfer entities at a speed which is faster than the time to judgment so as to render any remedy at law of the Funds for future transfers inadequate such that the balance of equities favors the Funds.

56.     All conditions precedent to injunctive relief have been satisfied.

**WHEREFORE**, the Funds ask that the Court:

(1) Declare that the transfers of assets of MSD to be fraudulent conveyances.

(2) Declare the transfers to be void.

(3) Enter judgment against ALN, G. Peterson and B. Peterson, individually and jointly, for the amount of the proceeds they received directly, indirectly or beneficially from such transfer and impress the proceeds, in whatever form and wherever traceable, with a constructive trust in favor of the Funds.

(4) Enter judgment against ALN, B. Peterson and G. Peterson, and any other organization under their control for damages occasioned to the Funds together with attorney's fees, costs and interest.

(5) Enjoin ALN, B. Peterson, G. Peterson, and any other organization under their control, their officers, agents, servants, employees, attorneys and persons in active concert or participation with them who receive actual notice of an order by personal service or otherwise from transferring any of the property transferred to them (including the proceeds from the transfers) or from transferring any real or personal property which they own or in which they have a legal or equitable interest except to return it to creditors or its other rightful owner.

(6) Appoint a receiver to take charge of all property received by ALN, B. Peterson and G. Peterson in these transfers (including the proceeds of such transfers) and their other property with which it is commingled and held in trust for the benefit of creditors.

(7) Allow Funds to execute on property transferred to ALN, B. Peterson and G. Peterson and on the proceeds received by them.

(8) Grant such other and further relief, legal or equitable, as may be just, necessary or appropriate.

## COUNT VI – CONSTRUCTIVE TRUST

### FUNDS

### v.

### COLDIRON, CEI, CBI AND ALN

56.     The allegations of Paragraphs 1 through 29, 36 through 56 are incorporated by reference as if fully restated.

57.     Coldiron, CEI, CBI and ALN hold assets received from MSD in trust for creditors of MSD, including the Funds.

58.     The amounts for which MSD is liable have not been paid.

**WHEREFORE**, the Funds ask that the Court:

(1)     Declare a constructive trust and enter judgment against Coldiron, CEI, CBI, and ALN, jointly and severally, and in favor of the Funds for the amount(s) they received from MSD together with interest, earnings and any profits it has made from the use of the property or the proceeds.

(2)     Grant such other relief, legal or equitable as may be just, necessary or appropriate.

## COUNT VII – CONVERSION

### FUNDS

### v.

### COLDIRON, CEI, CBI AND ALN

59.     The allegations of Paragraphs 1 through 2, 36 through 58 are incorporated by reference as if fully restated.

60.     Coldiron, CEI, CBI and ALN have intentionally and tortiously converted property held in trust on behalf of creditors of MSD, including the Funds, without any lawful justification.

61. Demand has been made on the Funds or their trustees for creditors for action for recovery of the property without action or would be futile.

62. The Funds (and other creditors) have been damaged by the conversion of assets held for them in trust.

**WHEREFORE**, the Funds ask that the Court:

(1) Award damages and make the Funds whole for any losses resulting from Coldiron's, CEI's, CBI's and ALN's tortious conversion of property including the fair value of such property, and actual proceeds, product, offspring, rents or profits of such property that at any time came into their possession, custody or control;

(2) Restore any profits and the fair value of use or lost opportunity from the use of the Funds, and;

(3) Grant such other relief, legal or equitable, as may be just, necessary or appropriate.

## COUNT VIII –AUDIT

## FUNDS

## v.

## ALL DEFENDANTS

63. The allegations of Paragraphs 1 through 29, 36 through 62 are incorporated by reference as if fully restated.

64. The amount of contributions Defendants are required to pay the Funds is based upon hours worked and paid to employees performing work covered by the Labor Contract.

65. The Funds are without sufficient information or knowledge to plead the precise nature, extent and amount of any additional delinquency beyond that reflected on the remittance

reports prepared by and submitted by Defendants and CBI because the books, records and information necessary to determine this liability are in exclusive possession, custody, control or knowledge of the Defendants.

66.   A portion of the documents in possession of the Defendants which are necessary for the performance of an audit were destroyed prematurely and outside of accepted business practices.

67.   Computation of the precise amount of an employers delinquency is normally achieved by an audit of the employers book and records.

68.   No audit of the books and records of Coldiron Companies, CBI or ALN has been performed.

69.   Defendants are required by the Labor Contract, Trust Agreements of the Funds, the Settlement Agreement and applicable law to permit the Funds to audit their records and to cooperate in determining the contributions due the Funds.

70.   The Funds have no adequate remedy at law for the calculation of any damages suffered as a result of the breach and require an audit.

71.   All conditions precedent to equitable relief have been satisfied.

**WHEREFORE**, the Funds ask that the Court:

(1)   Enjoin all Defendants their officers, agents, servants, employees, attorneys and all others in active concert or participation with them to permit an audit of all records of Coldiron Companies, CBI and ALN under their actual or constructive control and, in the absence of records to cooperate in alternative methods for the determination of work for which contributions are due, and

(2)   Order Defendants to pay for an audit by a certified public accountant chosen by

the Funds.

    (3)    Grant such other or further relief, legal or equitable, as may be just, necessary or appropriate.

                              Respectfully submitted,

                              JENNINGS SIGMOND

Dated: June 27, 2002                s\Marc L. Gelman
                                          KENT G. CPREK (ID NO 40806)
                                          MARC L. GELMAN (ID NO. 78857)
                                          510 Walnut Street, Suite 1600
                                          Philadelphia, PA 19106
                                          (215) 351-0615/23

                                          Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I state under penalty of perjury that I caused a copy of the foregoing Amended Complaint to be deposited in the U.S. mail with postage for first class delivery, on the date and to the parties below.

MIDDLE STATES DRYWALL, INC
17 West Miner Street
West Chester, PA 19381

J.R. COLDIRON & SONS, INC.
P.O. Box 460
Newport Gap Pike
Avondale, PA 19311

COLDIRON ENTERPRISES, INC.
17 West Miner Street
P.O. Box 660
West Chester, PA 19381

COLDIRON BUILDING, INC.
845 Waterway Road
Oxford, PA 19363

ALN CONSTRUCTION
25 Good Hope Rd.
Landenberg, PA 19350

JOHN D. COLDIRON
845 Waterway Road
Oxford, PA 19363

JOHN R. COLDIRON
17 West Miner Street
P.O. Box 660
West Chester, PA 19381

BRENDA PETERSON
25 Good Hope Rd.
Landenberg, PA 19350

101316-1

GREG PETERSON
25 Good Hope Rd.
Landenberg, PA 19350


WALTER F. FLAMM, JR., ESQUIRE
925 Harvest Drive, Ste. 220
Blue Bell, PA 19422


s\Marc L. Gelman
**MARC L. GELMAN, ESQUIRE**

**DATE:**  June 27, 2002

**Note:  This document has been electronically filed.**