Local 626 or another local union affiliated with the United Brotherhood of Carpenters and Joiners of America.

8.    **Non-Union Competition**. In situations where the Coldiron Companies or New Coldiron Companies attempt to obtain work on commercial or residential projects on which they are subject to open-shop competition, Local 626 agrees to meet with the Coldiron Companies or New Coldiron Companies for the purpose of discussing the possibility of implementing such "competitive adjustments" as may be agreed to by and between Local 626 and the Coldiron Companies or New Coldiron Companies. The Coldiron Companies or New Coldiron Companies shall notify Local 626 of their intent to bid for such work and request a meeting to discuss any such adjustments **prior to** entering into any contractual obligation to perform work covered by their collective bargaining agreement with Local 626 on any such project.

9.    **Security for Payment of Contributions**. In order to secure the Coldiron Companies and any New Coldiron Companies full and timely payment of their present and future fringe benefit contribution obligations to the Fund Parties, the Coldiron Companies and any New Coldiron Companies shall:

(A)    Post a fringe benefit surety bond payable to Fund Parties in an amount equal to the greater of $40,000 or three (3) months of anticipated contributions (based upon the anticipated size of the work force as agreed to in writing by Local 626 and the Coldiron Companies or New Coldiron Companies). The bond shall be in a form acceptable to Fund Parties and shall be issued by an insurance/surety company or other surety acceptable to Fund Parties. If the work force is increased beyond the level in effect when the bond or escrow was established initially, the amount of the bond or escrow shall be increased accordingly. The Coldiron Companies or New

7

Coldiron Companies shall notify the Fund Parties in writing of their intent to increase their work force **prior to** actually increasing its size.

(B)   In the event the Coldiron Companies or New Coldiron Companies are unable or unwilling to obtain the required fringe benefit bond, they shall at their option:

(1) Deposit in an escrow account with an escrow agent named by the Trustees of the Funds an amount equal to that required for the fringe benefit surety bond.

or

(2)(a) Remit contributions on a weekly basis, with payment and a completed remittance report due in the Fund Office within three (3) business days after the end of each payroll period; and

(i) With respect to contracts with a value of $25,000 or more, direct the general contractor, owner or other party for whom they are working to withhold from their periodic progress payments and remit directly to Fund Parties the full amount of any contributions due and owing to Fund Parties at the time such progress payments become payable to the Coldiron Companies or New Coldiron Companies. The Coldiron Companies and New Coldiron Companies shall cooperate in determining the amount owed to Fund Parties and notifying the necessary parties; and

(ii) With respect to all contracts valued at less than $25,000, post a $5,000 cash escrow or bond with the Fund Parties.

(C)   The Coldiron Companies and New Coldiron Companies may, during the term of this Agreement request that the provisions of this Paragraph 9 be waived and that the Coldiron

11827.2

8

Companies and New Coldiron Companies be afforded the same terms with respect to security for fringe benefit payments and timing of payments as are applied to the majority of contractors signatory to collective bargaining agreements with Local 626. Such request shall not be unreasonably denied by the Fund Parties. No such request shall be made prior to the first anniversary date of this Agreement.

10. **Non-Admission Clause**. Nothing in this Settlement Agreement or the fact that the Coldiron Companies have executed it will be considered or construed as an admission of any acts of wrongdoing of any kind whatsoever by the Coldiron Companies against the Fund Parties, including any admission that the Coldiron Companies have violated any provisions of their collective bargaining agreements with Local 626 or of any violation of any state or federal law or regulation.

11. **Release**. In consideration of the Coldiron Companies' (including any New Coldiron Companies) and the Coldirons' agreements as set forth herein, the Fund Parties and their predecessors, successors, agents, officers, trustees, participants, beneficiaries and assigns, except as set forth in Section 12 of this Settlement Agreement with respect to the judgment in Civil Action No. 91-3086 (E.D. PA), release the Coldiron Companies and the Coldirons, their predecessors, successors, officers, employees, beneficiaries, heirs (as appropriate) and assigns from any claim the Fund Parties had, have, or may have from the beginning of time until the date of this Settlement Agreement, arising out of any breaches of the collective bargaining agreement by the Coldiron Companies or the relationship between and among the parties provided, however, that nothing contained herein will release or be construed to release the Coldiron Companies (or any New Coldiron Companies) from their obligation to abide by the terms,

11827.2                                  9

conditions and provisions of the presently existing or future collective bargaining agreements

between the Coldiron Companies and/or any New Coldiron Companies and Local 626 and this

Settlement Agreement.

12.  **Dismissal of Civil Action**.  Upon complete execution of this Settlement Agreement

and the Labor Contract, the Fund Parties and the Coldiron Companies will execute a Stipulation

dismissing the Civil Action without prejudice and without costs.  Notwithstanding the release

provision in Section 11 of this Settlement Agreement, the Fund Parties shall not be required to

mark the judgment entered in Civil Action No. 91-3086 satisfied until the Coldiron Companies

(including any New Coldiron Companies) and the Coldirons comply with all terms and

conditions of this Settlement Agreement and the Fund Parties receive and retain the Settlement

Sum. In the event that the Coldiron Companies or the New Coldiron Companies notify the Fund

Parties that the existence of the judgment presents difficulties in securing credit or bonding

which affects their ability to perform their obligations under this Agreement or generate revenue

to pay the obligations of this Agreement, the Fund Parties shall cooperate with them in taking

such action as may be advisable to resolve the difficulties.  Such actions may, but need not,

include (but are not limited to) entering into appropriate subordination agreements or marking

the judgment satisfied.  Notwithstanding the foregoing, upon fulfillment by the Coldiron

Companies or the New Coldiron Companies of the payment terms of this Agreement, the Fund

Parties shall, without further action on the part of the Coldiron Companies or New Coldiron

Companies, mark the judgment satisfied.

13.  **Default and Remedy**. In the event of any violation of this Settlement Agreement

(including the failure to remit any installment payment referred to in Section 1 by the due date on

10

the payment schedule) by the Coldiron Companies (including any New Coldiron Companies) or the Coldirons, the Fund Parties shall be entitled to the entry of a joint and several judgment against the Coldiron Companies and New Coldiron Companies. The amount of the judgment shall be as follows:

(a) $700,000 if the violation occurs before April 30, 1997;

(b) $600,000 if the violation occurs after April 30, 1997 and on or before April 30, 1998;

(c) $500,000 if the violation occurs after April 30, 1998 and on or before April 30, 1999;

(d) $400,000 if the violation occurs after April 30, 1999 and on or before April 30, 2000;

(e) $300,000 if the violation occurs after April 30, 2000 and on or before April 30, 2001;

(f) $200,000 if the violation occurs after April 30, 2001 and on or before April 30, 2002;

(g) $100,000 if the violation occurs after April 30, 2002 and on or before April 30, 2003;

The parties agree that the claims alleged in the Civil Action which are being compromised by this settlement include a prior judgment in the amount of $403,000 (including contributions of $366,075, work dues of $14,340, and $22,500 in attorneys' fees and costs) plus accrued interest from May 27, 1992 and other related claims against CEI and MSD that have not been reduced to judgment. The parties further understand and agree that the calculation of damages to the Fund Parties resulting from a violation of this Settlement Agreement by the Coldiron Companies (including any New Coldiron Companies) or the Coldirons would be difficult. The parties agree that the judgment in favor of the Fund Parties for the amount set forth above represents a reasonable compromise of such damage claim. The Coldiron Companies and New Coldiron Companies waive all right to contest or claim that the damages set forth above constitute a penalty and not liquidated damages.

11827.2

11

14.   **Confession of Judgment**. In connection with the judgment provisions in Sections 1, 6 and 13 of this Settlement Agreement, the Coldiron Companies and the Coldirons shall execute the Note and Warrant attached as Exhibit 3 provided, however, that the Coldirons shall not be deemed to be, and are not, liable personally for judgment by confession or otherwise based solely upon their execution of the Note and Warrant.

15.   **Certification**. The Coldirons and the signatory representatives of the Coldiron Companies and the Fund Parties, hereby certify that they have read the terms of this Settlement Agreement, that they have had an opportunity to discuss it with their attorneys and that they understand its terms and effects.

16.   **Fund Signature Authority**. The Fund Parties hereby represent, warrant and covenant that this Settlement Agreement has been duly approved by their respective Boards of Trustees or other governing body in accordance with the appropriate plan or other governing documents, that the persons signing on behalf of the Fund Parties are authorized by the appropriate Plan, trust documents or other governing documents to enter into this Settlement Agreement on behalf of the Fund Parties, and that this Settlement Agreement is a valid agreement binding upon the Fund Parties, their Boards of Trustees or other governing body and their beneficiaries.

17.   **Coldiron Companies Signature Authority**. J.R. Coldiron & Sons, Inc., Coldiron Enterprises Inc. and Middle States Drywall, Inc., represent, warrant and covenant that the persons signing on behalf of each of them are their authorized agents, that the signatures written above the name and office of such persons are such persons' genuine signatures, and that they are authorized by the appropriate corporate documents to enter into this Settlement Agreement on

11827.2

12

behalf of the respective company without approval of such company's Board of Directors that this Settlement Agreement is a valid agreement binding upon each such company.

18. **Survival of Representations and Warranties**. All material representations, warranties, covenants and agreements made by the parties in this Settlement Agreement or in any instrument, document, agreement or writing furnished pursuant hereto or made in connection with the negotiation, execution or performance of this Settlement Agreement, shall survive the execution of this Settlement Agreement.

19. **Counterparts**. This Settlement Agreement may be executed in two or more counterparts and any party hereto may execute any such counterpart, each of which when executed and delivered shall be deemed to be an original and all of which counterparts taken together shall constitute one and the same instrument. It shall not be necessary in making proof of this Settlement Agreement or any counterpart hereof to produce or account for any of the other counterparts.

20. **Binding Effect**. All of the terms and conditions of this Settlement Agreement and documents executed in connection herewith shall be binding upon and inure to the benefit of the Coldiron Companies (including any New Coldiron Companies), the Coldirons, the Fund Parties and their respective successors and assigns, heirs and administrators as the case may be.

21. **Modification of Agreement**. This Settlement Agreement may not be amended or modified except by written instrument duly executed by each of the parties hereto, or their authorized representatives.

22. **Severability**. Any provision of this Settlement Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such

11827.2

13

prohibition or unenforceability without affecting the validity or enforceability of the remainder of this Settlement Agreement or the validity or enforceability of such provision in any other jurisdiction.

23.   **Governing Law**.  To the extent not governed by federal law, this Settlement Agreement shall be governed by the laws of the Commonwealth of Pennsylvania without reference to the principles governing the conflict of laws applicable in this or any other jurisdiction.

**WHEREFORE, INTENDING TO BE LEGALLY BOUND HEREBY**, the parties hereto having read all the foregoing, understanding the same and agreeing to all of the provisions contained herein, set their hands and seals hereto as of the date first above written.

WITNESS:

LOCAL UNION NO. 626 UNITED
BROTHERHOOD OF CARPENTERS
AND JOINERS OF AMERICA
WELFARE FUND
LOCAL UNION NO. 626 UNITED
BROTHERHOOD OF CARPENTERS
AND JOINERS OF AMERICA PENSION
FUND
LOCAL UNION NO. 626 UNITED
BROTHERHOOD OF CARPENTERS
AND JOINERS OF AMERICA
APPRENTICESHIP FUND t/a
CARPENTERS LOCAL 626 JOINT
APPRENTICESHIP TRAINING
CENTER, INC.

BY: _____
Employer Trustee

BY: _____
Union Trustee

11827.2

14

WITNESS:

UNITED BROTHERHOOD OF
CARPENTERS AND JOINERS OF
AMERICA, AFL-CIO LOCAL 626
OF DELAWARE

BY: _____
JOSEPH P. DURHAM,    President

ATTEST:

J.R. COLDIRON & SONS, INC.

_____
Corporate Secretary

BY: _____
JOHN R. COLDIRON,    President  VP

Place Corporate
Seal Here

ATTEST:

COLDIRON ENTERPRISES, INC.

_____
Corporate Secretary

BY: _____
JOHN D. COLDIRON,    President

Place Corporate
Seal Here

ATTEST:

MIDDLE STATES DRYWALL, INC.

_____
Corporate Secretary

BY: _____
JOHN D. COLDIRON,    President

Place Corporate
Seal Here

WITNESS:

_____
Grace Allen

_____
Grace Allen

_____
Grace Allen

BRENDA PETERSON

JOHN D. COLDIRON

JOHN R. COLDIRON

11827.2

15