# EXHIBIT "1"

Case 2:02-cv-02761-RBS   Document 6-2   Filed 10/11/2002   Page 1 of 7

## SETTLEMENT AGREEMENT
### Dated: October 9, 1996

**THIS SETTLEMENT AGREEMENT** is between the Local Union No. 626 United Brotherhood of Carpenters and Joiners of America Pension Fund, Local Union No. 626 United Brotherhood of Carpenters and Joiners of America Welfare Trust Fund, Local Union No. 626 United Brotherhood of Carpenters and Joiners of America Apprenticeship Fund t/a Carpenters Local 626 Joint Apprenticeship Training Center, Inc. (jointly "Funds"), United Brotherhood of Carpenters and Joiners of America, AFL-CIO Local 626 of Delaware ("Local 626" and jointly with Funds, "Fund Parties") and J.R. Coldiron & Sons, Inc., Coldiron Enterprises, Inc. and Middle States Drywall, Inc. ("JRC," "CEI," and "MSD" and jointly, "Coldiron Companies"), John D. Coldiron, John R. Coldiron and Brenda Peterson (jointly "the Coldirons") who mutually agree to be bound by all terms and conditions hereof.

**WHEREAS**, the Fund Parties have asserted claims against the Coldiron Companies under federal law for wages, delinquent contributions, liquidated damages, interest and attorneys' fees and costs due and owing to the Fund Parties by the Coldiron Companies; and

**WHEREAS**, an audit of the Coldiron Companies records shows contributions are owed to the Fund Parties with respect to JRC; and

**WHEREAS**, the Fund Parties filed an action in the United States District Court for the Eastern District of Pennsylvania in which they asserted the aforementioned claims and which case has been designated as Civil Action No. 94-5424 (the "Civil Action"); and

**WHEREAS**, in response to the Civil Action, the Coldiron Companies have filed an Answer denying the claims; and

11827.2

WHEREAS, the Coldiron Companies have asserted a variety of defenses to the claims of the Fund Parties; and

WHEREAS, in connection with the Civil Action, each of the Coldiron Companies have provided their payroll records to the Fund Parties under oath pursuant to federal discovery procedures as complete, accurate and correct in all material respects; and

WHEREAS, each of the Coldiron Companies are separate and valid corporations established under the laws of the State of Delaware; and

WHEREAS, although the Coldiron Companies acknowledge that one or more of them may have operated at the same time those operations were performed using separate and independent workforces; and

WHEREAS, the Coldirons are the majority shareholders or otherwise have a substantial financial interest in the Coldiron Companies such that the settlement of the Fund Parties' claims against the Coldiron Companies as set forth in this Settlement Agreement is adequate consideration for the obligations to be undertaken by the Coldirons in connection with the settlement; and

WHEREAS, the Coldiron Companies represent and warrant to the Fund Parties that their liabilities to their lenders secured by valid and perfected liens on their real and personal property exceed the present fair market value of such property such that a judgment in favor of the Fund Parties in the amount claimed by them would be uncollectible and likely result in a bankruptcy in which the Fund Parties' likely would not be paid; and

WHEREAS, the Fund Parties and the Coldiron Companies (including the Coldirons) desire to amicably resolve their disputes, including all claims asserted in the Civil Action, and

11827.2

2

desire to avoid the time and expense that would result from continued litigation of these matters.

**NOW, THEREFORE**, the Coldiron Companies, the Coldirons and Fund Parties with serious purpose and intent to be legally bound and for mutual consideration and in full settlement of all pending claims against the Coldiron Companies that relate to the Civil Action, agree as follows:

1. **Settlement Payment**. JRC will pay to the Fund Parties the sum of Seventy Five Thousand Dollars ($75,000) ("Settlement Sum") in accordance with the payment schedule attached to this Settlement Agreement as Exhibit 1. Payment will be made by certified check payable to Sagot, Jennings and Sigmond. CEI, MSD, and any New Coldiron Company as hereinafter defined, jointly and severally, guarantee the timely payment of the Settlement Sum and consent to the entry of a judgment against them for the full outstanding balance of Settlement Sum or such other amount as may be due and owing under the terms of this Settlement Agreement in the event any installment payment is not paid on the due date set forth in the payment schedule.

2. **Operating Company**. The Coldiron Companies represent and warrant that JRC and CEI have ceased all operations and that MSD is the only currently operating construction company in which John D. Coldiron, John R. Coldiron and/or Brenda Peterson have any financial or beneficial interest. JRC, CEI and MSD agree that if JRC and/or CEI, resume operations in the construction industry in the geographic and work jurisdiction of Local 626, they will be bound by all terms of this settlement including the obligation to execute the collective bargaining agreements referred to herein.

3. **Collective Bargaining Agreement**. Coincident with the execution of this

Settlement Agreement by the Coldiron Companies, Middle States Drywall, Inc. will execute the master collective bargaining agreement with the United Brotherhood of Carpenters and Joiners of America, AFL-CIO, Local 626 of Delaware ("Labor Contract") (Exhibit 2). Middle States Drywall, Inc. agrees to be bound by and comply with all terms and conditions of the Labor Contract within the geographic and work jurisdictions of Local 626 as defined and set forth in the Labor Contract.

4. **Trust Agreements**. By execution of this Settlement Agreement and the collective bargaining agreement attached as Exhibit 2, Middle States Drywall, Inc. agrees to be bound by the trust agreements governing the operation and administration of the Funds as presently in effect and as may hereafter be modified or amended and hereby waives all notice thereof and ratifies all actions already taken or to be taken by the Trustees of the Funds within the scope of their authority.

5. **Anti-Evasion**. The Coldiron Companies and the Coldirons agree that all other presently-existing or subsequently-formed companies or business entities conducting the same or similar type of business(es) as the Coldiron Companies within the geographic and work jurisdiction of Local 626 (referred to as "New Coldiron Companies") which the Coldiron Companies and/or the Coldirons directly or indirectly control through financial or other means will execute the Labor Contract referred to in Section 3 above as then in effect and will abide by all terms and conditions thereof and the trust agreements of the Funds.

6. **Collective Bargaining Term and Effect of Disavowal of Collective Bargaining Agreement**. Middle States Drywall, Inc., the other Coldiron Companies and any New Coldiron Companies agree that, through April 30, 2003, they shall recognize Local 626 as the exclusive

11827.2                              4

bargaining representative of their employees performing work within Local 626's geographic and work jurisdiction and shall execute any and all collective bargaining agreements with Local 626 covering the type of work they perform as may be in effect through April 30, 2003.

In the event Middle States Drywall, Inc., any of the other Coldiron Companies or any New Coldiron Company shall withdraw their recognition of Local 626 as the exclusive bargaining representative of the aforesaid employees prior to April 30, 2003, said company or companies consent(s) to the entry of a judgment against it (them) and in favor of the Fund Parties. The amount of the judgment shall be as follows:

(a) $700,000 if the withdrawal occurs before April 30, 1997;

(b) $600,000 if the withdrawal occurs after April 30, 1997 and on or before April 30, 1998;

(c) $500,000 if the withdrawal occurs after April 30, 1998 and on or before April 30, 1999;

(d) $400,000 if the withdrawal occurs after April 30, 1999 and on or before April 30, 2000;

(e) $300,000 if the withdrawal occurs after April 30, 2000 and on or before April 30, 2001;

(f) $200,000 if the withdrawal occurs after April 30, 2001 and on or before April 30, 2002;

(g) $100,000 if the withdrawal occurs after April 30, 2002 and on or before April 30, 2003;

The parties agree that the claims alleged in the Civil Action which are being compromised by this settlement include a prior judgment in the amount of $403,000 (including contributions of $366,075, work dues of $14,340, and $22,500 in attorneys' fees and costs) plus accrued interest from May 27, 1992 and other related claims against CEI and MSD that have not

been reduced to judgment. The parties further understand and agree that in the event of the withdrawal of recognition the calculation of damages would be difficult. The parties agree that the judgment in favor of the Fund Parties for the amount set forth above represents a reasonable compromise of such damage claim. The Coldiron Companies and New Coldiron Companies waive all right to contest or claim that the damages set forth above constitute a penalty and not liquidated damages.

7. **Union Membership**. Immediately following execution of this Settlement Agreement, all work covered by the Labor Contract and performed by the Coldiron Companies and/or New Coldiron Companies within the geographic and work jurisdiction of Local 626 will be performed only by employees of the Coldiron Companies or New Coldiron Companies (a) who are members of Local 626; or (b) who are referred to the Coldiron Companies or New Coldiron Companies by Local 626; or (c) by members of another local union affiliated with the United Brotherhood of Carpenters and Joiners of America who have permits to work within the geographic jurisdiction of Local 626. In the event the Coldiron Companies or New Coldiron Companies elect to utilize their employees who are members of Local 626 to perform work outside the geographic jurisdiction of Local 626, all terms and conditions of the Labor Contract between the Coldiron Companies and/or the New Coldiron Companies and Local 626 will apply unless the Coldiron Companies and/or any New Coldiron Companies are signatory to a collective bargaining agreement with the carpenters local union in whose jurisdiction the work is to be performed in which case the terms and conditions of such agreement shall apply and, in addition, the Coldiron Companies and the New Coldiron Companies will not assign any such employee to work with any person(s) who is(are) not also covered by a collective bargaining agreement with